Jack Stanislaw, J.
In this declaratory judgment action plaintiff -Sarisohn moves to enjoin the defendants from discontinuing the financial benefits of District Court Judge previously received by him. He further seeks to restrain defendant Dennison from acting, in his capacity as County Executive, to appoint a District 'Court Judge to the vacancy said to exist. The vacancy has been assumed by reason of an order of the Appellate Division, Second Department, removing plaintiff as a Judge of the District Court of Suffolk County.
It has been .stipulated by the parties that an order was entered directing plaintiff’s removal as District Court Judge on May 15, 1967. Two days later, on May 17, plaintiff served and filed a notice of appeal from that order. He was personally served with a copy of the removal order on May 19, 1967. It is conceded that Dennison has initiated procedures with the object of making an appointment to fill the vacancy alleged. Plaintiff has not received his salary nor any other benefits as District Court Judge since May 16, 1967.
Because -Sarisohn served and filed his appeal before he had himself been served with a copy of the order of removal he argues that at the time his appeal was taken he was a public officer and entitled to protection as such in accordance with -CPLR 5519 (subd. [a]). That section provides, in part, that where the appellant is “ any officer or agency of the state or of any political subdivision of the state ” (par. 1) the service of a notice of appeal upon the adverse party automatically stays 'all proceedings to enforce the judgment or order appealed from pending the appeal.
The defendants insist that the section (CPLR 5519, subd. [a]) is not available to the plaintiff. Essentially, they make two distinctions to negate plaintiff’s ability to utilize its pro *1083 visions. The first, that a removal proceeding is not adversary thus without an “ adverse party ” upon whom a notice of appeal may be served so as to result in the stay. The other, that plaintiff is not an officer of a political subdivision of the State anyway, so that the section referred to is of no benefit to him here.
The removal proceeding stated initial reliance, to some extent, upon section 132 of the Code of Criminal Procedure (“ Removal of inferior court judges ”), the further authority being noticed as article VI (§ 22, subd. i) of the Constitution and subdivision (e) of section 103 of the Uniform District Court Act. Assuming, as we must, that these cited statutes were controlling of the procedures followed, the question at the outset is whether that proceeding was an adversary one.
Disciplinary proceedings involving atorneys have been long recognized as adversary situations (Matter of Phillies, 17 A D 2d 93, mot. for Iv. to app. den. 12 N Y 2d 645; Judiciary Law, § 90). Although as a practical matter proceedings against attorneys are entertained only following preliminary (usually bar association) examination (Matter of Lesterwick v. Queens County Bar Assn., 43 Misc 2d 996, and cases cited therein) the ostensible similarity in procedures is clear. However, insofar as the judiciary of inferior courts is concerned, the power of an Appellate Division to act also springs from the Constitution, the Code of Criminal Procedure, and the UDCA, as noted above. The Judiciary Law contains a good deal of detail regarding the processing of an attorney-discipline proceeding, whereas the removal of judicial officers is simply provided for in the various statutes and the nature and manner of procedural development somewhat vaguely left in the hands of the Appellate Division (cf. Matter of Kane v. Rudich, 256 App. Div. 586). This dissimilarity has repercussions beyond procedural details, most importantly perhaps in eliminating removal procedures against judicial officers from the possible ambit of “ special proceedings ” as described at article 4 of the CPLR. Neither in describing an ability to proceed against a judicial officer nor in actual practice is there indication of anything akin to a special proceeding as prescribed by section 90 of the Judiciary Law. Thus, it is our opinion that judicial removal procedures do not fall within a generally recognized form of proceeding.
Yet despite the fact that a removal proceeding apparently does not qualify as a special proceeding the logic of plaintiff’s argument, that regardless of its categorization the removal proceeding is adversary, is not completely ineffectual or unreasonable. Insofar as service is required upon an adverse party *1084 (CPLR 5519, subd. [a]) it cannot be said to have been otherwise here. Simply because the removal proceeding was conducted outside a familiar framework does not negate the manifest position of Sarisohn on the one side and the Appellate Division on the other, adversaries in that proceeding regardless of its Characterization.
Nevertheless, it would seem that plaintiff does not fall within the protection of the statutory stay of enforcement. To qualify for this automatic stay one must be, at least so far as pertinent here, an officer of a political subdivision of the State. In the first place, the District Court district in Suffolk County consists of only a part of the county as a whole. That subdivision was established solely for the purpose of creating and maintaining a judicial district. Thus it would appear to be neither political nor “ of the state ”. If the district is political at all it is only so to the extent that the electorate within the defined area votes on judicial candidates. However, the district exhibits no other visible political function or status. Though political subdivisions are varyingly defined and described, depending upon the context within which the elucidation is being framed, nearly every if not all such postulations make pointed reference to an ability to govern. This semi-Suffolk judicial district is probably one of the few stated areas in which such ability is pointedly and patently absent.
The probable object of the stay of enforcement provision permitted political subdivisions, to stabilize at least pending appeal the effect of a determination adversely directed to a governmental function, is to simultaneously demonstrate its probable inapplicability to this plaintiff. He seeks to avail himself of the stay for reasons apparently beyond its purpose and intent. The order appealed from is not one expressing a political function, but is instead an intra-judicial, administrative order of removal itself directed to the very status which is sought to be utilized to invoke the stay.
It is important to note as well two other provisions of law bearing on the theory of plaintiff’s position. Both are relevant more for their negative implications than for what they state affirmatively. Section 24 of the Judiciary Law directs that a judge ‘ ‘ removed * * * for any cause not involving moral delinquency” shall continue to receive at least a part of Ms lawful salary. The section further adds that unless an order affirmatively states removal for other cause this ‘ ‘ continuance of such compensation” provision shall not be available. In other words, moral delinquency will be presumed in the absence of anything to the contrary. The other pertinent *1085 law is at subdivision d of section 21 of article VI of the Constitution. That a vacancy does arise upon the Appellate Division’s order is not disputed, and plaintiff here asks, in fact, that the vacancy remain just that. The constitutional provision mandates the filling of a vacancy in the office of Judge of the District Court, and goes on to prescribe just how and when this may be done. We cannot visualize how we might affirm plaintiff’s request without enjoining an act or acts unequivocally prescribed by the State Constitution in just such a .situation as the one before us. Since we are in no position to question the propriety of the constitutional provision in this proceeding, nor has the issue even been raised, there is no basis for interference with the persons or processes moving in furtherance of a clear constitutional statement of a duty and its performance.
Moreover, to pursue plaintiff’s argument reductio, we might assume that if we granted a stay the defendants here would be entirely capable of properly staying the stay on their own appeal. We are back where we started from and even then, upon a further determination with still another appeal possibly available, the stay(s) could just continue on and on.
Certain of Sarisohn’s arguments here, by capable and ingenious counsel it might be added, carry sufficient force and logic to be worthy of comment if not favorable result. Concededly plaintiff faces a serious problem following determination of the appeal taken. His job may have been filled, and vindication would have little, if any, value of a practical nature. Yet on the other hand, if removal is affirmed, plaintiff would have received salary and benefits to which he was not entitled. What then? The variety of subsequent consequences are beyond discussion. And again, if Sarisohn might have a stay of enforcement so as to continue on the payroll why not continuance as well at work, on the Bench? If plaintiff’s .position is well taken then in this instance it is well taken in its entirety as well as in its parts. Plaintiff apparently does not contest his continued nonfunction as a Judge pending appeal, but a stay of enforcement as to salary would logically seem capable of carrying with it a stay of enforcement as to removal. In fact, the order appealed from is an order of removal, and this suit is directed to a concomitant of removal per se. If we could stay enforcement partially against these defendants and require plaintiff’s continuance on the books, so to speak, it would not appear irrational to stay all of the removal. The one aspect is, of course, inextricably bound to the other. Viewing the action in this light helps *1086 to crystallize a rather vital point. Accepting the reasoning which has brought us this far, the rather improbable result of any affirmative action now would be, at least and quite pointedly, to nullify if only temporarily and only slightly an order of the Appellate Division made in furtherance of its constitutional supervision of lower courts generally. We cannot find an acceptable foundation for any such action.
Although plaintiff’s argument and even more particularly his practical predicament in general carry much weight and make a deep personal impression, we find ourselves unable to grant the temporary relief sought or to sustain his cause of action. The motion is denied and the complaint dismissed.
We are bound to acknowledge our appreciation to both counsel for cogent, extremely thoughtful and thoroughly professional argument and memoranda.