Honorable John K. Mladinov Acting Commissioner NYS Department of Transportation
Based upon your counsel's letter and telephone conversations with John E. Conway of his office and representatives of the Department of Law of the City of New York, a question has arisen whether the Buildings Department of the City of New York may remove commercial billboards erected in violation of the City's zoning laws on two parcels of property in the City owned by the Metropolitan Transportation Authority ("MTA") and the Consolidated Rail Corporation ("Conrail"), respectively. We understand that the signs in question were constructed in violation of existing zoning laws by or on behalf of commercial advertisers and are along highways forming a part of the Interstate System and the Primary System as described in 23 U.S.C. § 131, commonly known as the "Federal Highway Beautification Act of 1965". Because of the location of these signs, the State is faced with a possible loss of Federal highway funds otherwise available under this Act.
The MTA is a public benefit corporation (Public Authorities Law, Title 11, § 1263[1][a]) and a "state agency" for certain purposes (id.,
§ 1263[5]; Grant v Metropolitan Transportation Authority, et al.,96 Misc.2d 683 [Sup Ct, New York Co., 1978]), and has also been classified as a "political subdivision of the state" (Grant vMetropolitan Transportation Authority, supra). It is authorized to manage, control and direct the maintenance and operation of its transportation facilities, equipment or real property (Public Authorities Law, § 1266[8]). Municipalities, including cities, have no jurisdiction over the facilities of the MTA or any of its activities or operations, except as expressly provided (id.). The local laws, resolutions, ordinances and rules of a municipality conflicting with Title 11 or any rule of the MTA are not applicable to the activities, operations or facilities of the authority, "except such facilities that are devoted to purposes other than transportation purposes" (id.; emphasis supplied). The purposes of the MTA are to continue, develop and improve commuter transportation and related services within the metropolitan commuter transportation district, and to develop and implement a unified mass transportation policy for that district (id.,
§ 1264[1]). It is specifically provided by statute that, in carrying out these purposes, the MTA "shall be regarded as performing an essential governmental function" (id., § 1264[2]).
In People v Witherspoon, 52 Misc.2d 320 (Dist Ct, Suffolk Co, 1966), a case precisely on point, it was held that the use of MTA property for the erection and maintenance of commercial bill-boards has no direct bearing on MTA's governmental function of providing rail transportation services and is, therefore, subject to local zoning regulations. See, also, Matterof Suffolk Outdoor Advertising Co. v Town of Southampton (Sup Ct, Suffolk Co, March 30, 1981), affd 88 A.D.2d 601 (2d Dept, 1982), appeal docketed, Court of Appeals, October 7, 1982. The decisions inWitherspoon and Suffolk Outdoor Advertising are in accord with Public Authorities Law, §§ 1264 and 1266(8), which generally authorize local regulation of MTA property not used for transportation purposes, and with the general rule in New York that a governmental body is entitled to immunity from local zoning regulations only where its use of the property in question is in furtherance of a governmental, rather than a proprietary function. (See County of Westchester v Village of Mamaroneck,41 Misc.2d 811 [Sup Ct, Westchester Co, 1964] affd 22 A.D.2d 143 [2d Dept, 1964] affd 16 N.Y.2d 940 [1965]; Nehrbas v Inc. Village of LloydHarbor, 2 N.Y.2d 190 [1957].) We believe, therefore, that the construction and maintenance of commercial billboards on MTA property must be in compliance with the City's zoning ordinance (Public Authorities Law, §§ 1264, 1266; People v Witherspoon, supra; Matter ofSuffolk Outdoor Advertising Co. v Town of Southampton, supra).
Conrail, which came into existence under the Federal Regional Rail Reorganization Act, 45 U.S.C. ch 16, §§ 701, et seq., is not an agent or instrumentality of the Federal government, but a "for-profit corporation" established under State law (45 U.S.C. § 741[b]). It is subject to all applicable State law to the extent that such law is not inconsistent with the Interstate Commerce Act ("Title 49") or the Regional Rail Reorganization Act ("Reorganization Act") (id.).
Title 49 establishes a comprehensive regulatory system over transportation by carriers in interstate (49 U.S.C. § 10501) and, in certain instances, intrastate (id., § 11501) commerce, including the regulation of transportation rates, classifications, rules and practices of such carriers (id., § 10701). In general, local regulation of intrastate commerce is not preempted by Title 49, unless such regulation imposes an unreasonable burden on interstate or foreign commerce (id.,
§§ 10501[b], [c], 11501). The Reorganization Act was enacted to provide a continuity of rail service in certain regions of the country through the reorganization of insolvent railroads in those regions (45 U.S.C. § 701). Under the Act, Conrail is authorized to acquire property for use in rail transportation service and to operate that service in accordance with a final system plan of reorganization adopted by the United States Railway Association, the overseer of Conrail's operations (id., §§ 702[14], 711, 712, 716, 717, 742). The plan is designed to effectuate the legislative goal of ensuring continuity of rail service in the affected areas (id., §§ 701[b], 716). States are specifically preempted from regulating in the areas of employment and employee benefits (id., § 797j).
We think that a local zoning ordinance regulating commercial billboards on Conrail property is neither inconsistent with nor prohibited by the purposes and provisions of Title 49 or the Reorganization Act. The construction and maintenance of commercial billboards, in the factual context presented, is strictly an intrastate matter incidental to rail transportation service, and local regulation of that activity by zoning ordinance neither affects rail service nor unreasonably burdens interstate or foreign commerce. See People v Witherspoon, supra. In providing for the establishment of Conrail under State law (45 U.S.C. § 741[b]), and for preemption only in specified instances (id., § 797j), Congress apparently intended that Conrail be governed by all State law applicable to other "for-profit" corporations where the law has no significant effect on interstate commerce or rail service (id., § 741[b]). We believe, therefore, that the use of Conrail property for the erection and maintenance of commercial billboards is also subject to regulation under the City's zoning law.
The Buildings Department is authorized to enforce the provisions of the City's zoning law in relation to the "location, construction, alteration and removal of signs * * *" (New York City Charter, §§ 643, 1804). The Buildings Commissioner has the authority to issue notices and orders for enforcing compliance with the zoning law and for remedying any condition in violation of that law (Administrative Code of City of New York, § C26-643a-1.0). Such orders may provide for the removal of signs erected in violation of the zoning law (New York City Charter, § 643). Upon non-compliance with such order, the Department is authorized to remove the offending signs (Administrative Code of the City of New York, § C26-643a-9.0). The Department can also request the City's corporation counsel to institute appropriate legal proceedings to enjoin, correct or abate a violation of the zoning law within its jurisdiction or a failure to comply with the Commissioner's orders (id., §§ C26-643a-6.0 and 12.0).
In passing, we wish to point out that the Federal Highway Beautification Act does not preempt city ordinances regulating outdoor advertising signs, nor does it prohibit a city from removing signs unlawfully erected in violation of such ordinances (Ackerley Communications, Inc. v City ofSeattle, 92 Wn.2d 905, appeal dsmd, cert denied 449 U.S. 804 [1980]). We express no opinion on the removal of signs lawfully erected, such as those which may have become nonconforming uses under the City's zoning law. Rather, our opinion is restricted to the issue of the removal of signs which were erected in violation of existing zoning regulations. Nor do we express any opinion on the question of whether the owners of the signs in question would, under any circumstances, be entitled to compensation upon the removal of their signs under the Highway Beautification Act or any other provision of law.
We conclude that the City of New York may provide for the removal of commercial billboards erected in violation of its zoning law on property owned by MTA and Conrail.