Nashaat N. ANTONIOUS and Soheir
F. Antonious, Plaintiffs,

v.

Dawud MUHAMMAD, Goldome, Charles Raab, Ronald Taggart, Mary Murphy, County of Rockland, John Grant, Walter J. Green, Jr. and Kenneth Gribetz, Defendants.

No. 91 Civ. 2899 (JES).

United States District Court,
S.D. New York.

Jan. 19, 1995.

Norman L. Cousins, New York City, for plaintiffs.

J. Russell Clune, P.C., Harrison, NY, for defendant County of Rockland; Alfred E. Page, Jr., of counsel.

William A. Gerard, Nanuet, NY, for defendant Charles Raab.

Jeffrey S. Rovins, New York City, for defendants Ronald Taggart, Mary Murphy, John Grant and Walter J. Green, Jr.

Dornbush, Mensch, Mendelstam & Shaeffer, New York City, for defendant Kenneth Gribetz; Richard J. Schaeffer, of counsel.

**MEMORANDUM OPINION
AND ORDER**

SPRIZZO, District Judge.

Plaintiffs Nashaat N. Antonious ("Antonious") and Soheir F. Antonious (collectively "plaintiffs") bring this action against Dawud Muhammad, Goldome, Charles Raab, the County of Rockland ("Rockland County"), detectives Ronald Taggart and Mary Murphy, Assistant District Attorneys ("ADAs") John Grant and Walter J. Green, Jr., and District Attorney ("DA") Kenneth Gribetz.[1] Plaintiffs claim that these defendants are liable for false arrest, malicious prosecution, abuse of process, intentional infliction of emotional distress and various civil rights violations. Defendants Raab, Rockland County, Taggart, Murphy, Grant, Green and Gribetz (collectively "defendants") move for dismissal and/or summary judgment on various grounds including *res judicata.* For the reasons that follow, the defendants' motions for summary judgment are granted.

### BACKGROUND

In January 1989, plaintiff Nashaat N. Antonious hired Co-Ho Construction ("Co-Ho"), owned and operated by defendant Charles Raab, to make some repairs on his property located in Nyack, New York. Plaintiffs' Memorandum in Opposition ("Pltfs. Mem.") Exhs. 4 & 7; Affidavit of Charles Raab Sworn to April 5, 1993 ("Raab Affidavit") ¶ 4. Prior to the completion of the work, however, a monetary dispute arose between Antonious and Raab. Pltfs. Mem. Exhs. 4 & 7; Raab Aff. ¶¶ 3–4. In settlement of the dispute, Antonious allegedly endorsed an insurance check over to Raab, who then allegedly executed a Waiver of Right to File Lien (the "Waiver") against Antonious' property. Pltfs. Mem. Exhs. 4 & 7. Defendant Dawud Muhammad, manager of Goldome Bank and a notary public, witnessed the alleged endorsement of the check and the alleged execution of the Waiver. *Id.;* Raab Aff. ¶ 8. Shortly thereafter, an unspecified bank refused to honor the check. Pltfs. Mem. Exhs. 4 & 7.

---

1. For purposes of this opinion, Nashaat N. Antonious will be referred to as "Antonious," and Nashaat N. Antonious and Soheir F. Antonious will be referred to collectively as "plaintiffs."

In order to secure payment for the work performed by Co–Ho, Raab filed a mechanics lien against plaintiffs' property in the Rockland County Clerk's Office on March 20, 1989. Pltfs. Mem. Exhs. 4 & 7; Raab Aff. ¶ 10. On April 14, 1989, plaintiffs sold their property located in Nyack, but due to the presence of the lien, part of the sale proceeds were placed in escrow pending a resolution of the matter. Pltfs. Mem. Exhs. 4 & 7; Raab Aff. ¶¶ 11–12. Shortly thereafter, Raab commenced a civil action against Antonious in the Supreme Court of the State of New York, Rockland County ("Supreme Court, Rockland County") to recover the money allegedly owed to Co–Ho. Pltfs. Mem. Exh. 4; Raab Aff. ¶¶ 12–13. On April 17, 1989, Antonious filed a complaint against Raab with the Rockland County DA's office alleging, among other things, that Raab illegally endorsed and deposited the check and illegally filed the lien after the execution of the Waiver. Pltfs. Mem. Exhs. 4 & 7. Although Antonious was interviewed by ADA Walter Sevastian, the Rockland County DA's Office did not file charges against Raab. *Id.*

In May 1989, Raab filed a complaint against Antonious with the Rockland County DA's Office, alleging that he did not execute the Waiver. Affidavit of Jeffrey Rovins Sworn to July 29, 1993 ("Rovins Aff.") ¶ 1. Shortly thereafter, the Rockland County DA's Office commenced an investigation of the matter under the direction of defendant detective William P. Michella. Pltfs. Mem. Exh. 6; Rovins Aff. ¶ 1, Exh. 14. At an interview on June 26, 1989, Raab claimed that Antonious had forged his signature on the Waiver. Pltfs. Mem. Exh. 7; Rovins Aff. ¶ 1, Exh. 14 at 2–4. At an interview on July 21, 1989, Muhammad stated that an individual claiming to be Raab executed the Waiver at Goldome Bank, and described that individual as Antonious. Rovins Aff. ¶ 1, Exh. 14 at 6–7. On December 12, 1989, the investigation was reassigned to defendant detective Ronald Taggart. Pltfs. Mem. Exh. 8; Rovins Aff. ¶ 2, Exh. 10 at 1. At an interview on January 5, 1990, Muhammad again stated that an individual claiming to be Raab executed the Waiver. Rovins Aff. ¶ 2. In a photo line-up, Muhammad identified Antoni-

ous as that individual. Pltfs. Mem. Exh. 5; Rovins Aff. ¶ 2, Exhs. 2 & 4.

On May 1, 1990, after a review of the case by detective Taggart and defendant ADA John Grant, the Rockland County DA's Office charged Antonious with second degree forgery, criminal impersonation and criminal possession of a forged instrument in violation of sections 170.10, 190.25 and 170.25 of the New York State Penal Law. Pltfs. Mem. Exh. 1; Rovins Aff. ¶ 6, Exhs. 10, 17; Affidavit of John Grant Sworn to April 15, 1992 ("Grant Aff.") ¶¶ 3–5. That day, Justice Barry Traub of the Supreme Court, Rockland County issued a warrant for the arrest of Antonious. Pltfs. Mem. Exh. 2; Rovins Aff. ¶ 6, Exh. 7. The following day, detective Taggart and defendant detective Mary Murphy executed the warrant and arrested Antonious at his new residence located in Scarsdale, New York. Pltfs. Mem. Exh. 8; Rovins Aff. ¶ 7, Exh. 10 at 2; Grant Aff. ¶ 8. Later that day, Antonious was arraigned and released on bail. Pltfs. Mem. Exh. 8; Rovins Aff. ¶ 7, Exh. 10 at 2.

On or about May 8, 1990, defendant DA Kenneth Gribetz issued a press release to the *Rockland Journal–News*. Pltfs.Exhs. 14–15. The press release, prepared by ADA Grant, provided that Antonious was arrested on three criminal charges, provided a small history of the case, and stated that Antonious forged the Waiver in order to avoid paying Co–Ho. *Id.* On or about May 8, 1990, Gribetz was also interviewed by WRKL Radio in Rockland County. Pltfs. Mem. Exh. 17. As with the press release, the radio interview provided a brief overview of the criminal proceedings against Antonious. *Id.*

In August 1990, the investigation was reassigned to defendant ADA Walter J. Green. Rovins Aff. ¶ 8; Affidavit of Walter J. Green Sworn to April 16, 1992 ("Green Aff.") ¶ 3. On August 14, 1990, at the request of ADA Grant, Justice Traub reduced the charges against Antonious to misdemeanors. Rovins Aff. ¶ 8. At an interview on December 6, 1990, Muhammad claimed that Antonious and Raab were both present at Goldome Bank, and conceded that he was no longer certain whether Antonious signed the Waiver. Pltfs. Mem. Exh. 21; Rovins Aff. ¶¶ 12–14, Exh. 4.

On December 13, 1990, at the request of ADA Green, Justice Traub dismissed the charges against Antonious. Pltfs. Exh. 8; Rovins Aff. ¶ 15; Green Aff. ¶¶ 6–7. Shortly thereafter, Antonious and Raab settled their underlying civil action for six thousand dollars. Pltfs. Mem. Exh. 4; Raab Aff. ¶ 18.

On April 29, 1991, plaintiffs commenced the instant action against defendants Muhammad, Goldome, Raab, detectives Taggart and Murphy, ADAs Grant and Green, DA Gribetz and Rockland County in the United States District Court for the Southern District of New York. In their original complaint, plaintiffs claimed that defendants were liable for false arrest, malicious prosecution, abuse of process, subornation of perjury, obstruction of justice, intentional infliction of emotional distress, negligence and various civil rights violations.[2] Defendants Muhammad and Goldome have since filed cross-claims against Rockland County, which has filed cross-claims against defendants Raab, Muhammad and Goldome. On October 10, 1991, plaintiffs commenced another action against the same defendants in the Supreme Court, New York County as a protective measure against a possible lack of subject matter jurisdiction in federal court. On June 1, 1993, plaintiffs filed an amended complaint in the instant action to include factual allegations concerning the press release and radio interview of May 1990. On November 20, 1992, plaintiffs then commenced another federal action against ADA Sevastian and others claiming that they were liable for negligence and various civil rights violations.[3]

On May 19, 1992, Rockland County filed a motion for a change of venue in the Supreme Court, Rockland County in the state court action. Rockland County Supplemental Statement Pursuant to Local Rule 3(g) ("Rockland Supp. Rule 3(g) St.") ¶ 7; Affidavit of Alfred E. Page Sworn to December 2, 1993 ("Page Supp. Aff.") ¶ 10, Exh. R. On July 23, 1992, plaintiffs filed an affidavit in opposition to the motion to change venue.

Pltfs. Exh. 25; Page Supp. Aff. ¶ 11, Exh. S. On October 22, 1992, the Supreme Court, Rockland County granted defendants' motion to change venue to Rockland County pursuant to C.P.L.R. § 504(1), noting that "no compelling circumstances exist[ed]" to maintain venue in New York County. Pltfs. Mem. Exh. 26; Page Supp. Aff. ¶ 12, Exh. U. On November 20, 1992, plaintiffs filed a notice of appeal, which has not yet been perfected. Pltfs. Mem. Exh. 26; Page Supp. Aff. ¶ 13, Exh. V; Rockland Supp. Rule 3(g) St. ¶ 9.

On March 1, 1993, defendant Gribetz filed a motion to dismiss the state court action. Affidavit of Richard Schaeffer Sworn to July 30, 1993 ("Schaeffer Aff.") ¶ 12, Exh. E. On March 7, 1993, plaintiffs filed an affirmation in opposition to such motion, and on March 11, 1993, plaintiffs filed a cross-motion to stay the state court action. Schaeffer Aff. ¶¶ 13–14, Exhs. F, G. Between March 19 and April 6, 1993, defendants Taggart, Murphy, Grant, Green, Raab and Rockland County also filed motions to dismiss and/or motions for summary judgment in the state court action. Rovins Aff. ¶ 21, Exh. D; Affidavit of Alfred E. Page Sworn to July 30, 1993 ("Page Aff.") ¶ 6, Exh. G; Affidavit of William A. Gerard Sworn to July 29, 1993 ("Gerard Aff.") ¶ 8, Exh. E. On April 28, 1993, plaintiffs filed an affidavit in opposition to such motions. Gerard Aff. ¶ 9, Exh. F; Page Aff. ¶ 7, Exh. H. On April 30, 1993, plaintiffs filed a cross-motion seeking to voluntarily discontinue the state court action without prejudice. Gerard Aff. ¶ 10, Exh. G; Page Aff. ¶ 7, Exh. I.

By order dated March 31, 1993, the Supreme Court, Rockland County dismissed the action against Gribetz upon the ground of absolute immunity and denied plaintiffs' motion for a stay. Pltfs. Mem. Exh. 27; Schaeffer Aff. ¶¶ 3, 15, Exh. A. By order dated May 28, 1993, the court dismissed the actions against defendants Taggart, Murphy, Grant, Green, Raab and Rockland County and de-

---

2. Plaintiff Soheir F. Antonious claims loss of service, society and support during the criminal investigation and prosecution of her husband.

3. By order dated December 9, 1992, the Court accepted the later federal action as related to the instant action. By order dated December 22, 1994, the Court denied defendants' motion to dismiss in that action.

nied plaintiffs' cross-motion seeking a voluntary discontinuance without prejudice. Pltfs. Mem. Exh. 28; Rovins Aff. ¶ 23, Exh G; Gerard Aff. ¶ 11, Exh. A. On April 30 and July 23, 1993, plaintiffs filed notices of appeal concerning the respective dismissals with the Appellate Division, Second Department, which have not yet been perfected. Pltfs. Mem. Exhs. 27–28.

In the instant action, defendants Green, Grant, Murphy and Taggart filed a motion to dismiss and/or for summary judgment on July 30, 1993. That same day, defendant Gribetz filed a motion to dismiss and/or for summary judgment, and defendant Rockland County filed a motion for summary judgment. On August 3, 1993, defendant Raab filed a motion for summary judgment. Defendants primarily contend that the instant action is barred by the state court action under the doctrine of *res judicata.* In addition, defendants assert numerous other defenses including the Eleventh Amendment, absolute and qualified immunity, statute of limitations and failure to state a cause of action upon which relief may be granted.

## DISCUSSION

■ As noted above, defendants contend that the instant action is barred by the state court action under the doctrine of *res judicata.*[4] Pursuant to the Full Faith and Credit Act, 28 U.S.C. § 1738, federal courts must afford a state-court judgment the same preclusive effect it would have in the state court. *See Migra v. Warren City Sch. Dist. Bd. of Ed.,* 465 U.S. 75, 81–84, 104 S.Ct. 892, 896–98, 79 L.Ed.2d 56 (1984); *Fay v. South Colonie Cent. School Dist.,* 802 F.2d 21, 28–30 (2d Cir.1986); *see also Rodriguez v. Beame,* 423 F.Supp. 906, 907 (S.D.N.Y.1976) (applying *res judicata* in civil rights action). Under New York law, "where there is a valid final

judgment the doctrine of *res judicata,* or claim preclusion, bars future litigation between those parties on the same cause of action." *Hodes v. Axelrod,* 70 N.Y.2d 364, 520 N.Y.S.2d 933, 937, 515 N.E.2d 612 (1987) (citing *Reilly v. Reid,* 45 N.Y.2d 24, 407 N.Y.S.2d 645, 379 N.E.2d 172 (1978)). In this case, there is identity of parties because all of the moving defendants were also parties to the state court action.

### A. Identical Causes of Action

■ Plaintiffs argue that the instant action and the state court action do not involve identical causes of action. Under New York law, the modern transactional approach to *res judicata* is applicable. *See Heimbach v. Chu,* 744 F.2d 11, 14 (2d Cir.1984), *cert. denied,* 470 U.S. 1084, 105 S.Ct. 1842, 85 L.Ed.2d 141 (1985) (citation omitted); *Hodes,* 520 N.Y.S.2d at 937–38, 515 N.E.2d 612. Accordingly, "once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy." *O'Brien v. City of Syracuse,* 54 N.Y.2d 353, 445 N.Y.S.2d 687, 688, 429 N.E.2d 1158 (1981); *see also Fay,* 802 F.2d at 28. Aside from factual allegations concerning the press release and radio interview, the amended complaint is identical to both the original complaint and the complaint filed in the state court action. Page Aff. ¶ 5, Exhs. B, D & E. However, even these allegations arise from a related series of transactions, *i.e.,* the dispute between Antonious and Raab and the ensuing criminal prosecution of Antonious. Since these allegations could and should have been asserted in the state court action,[5] they are barred here even if the state court might have treated them differently had they been asserted there. It follows that under New

4. The Court notes that defendants Grant, Green, Gribetz, Taggart and Murphy have moved, in the alternative, for summary judgment and/or dismissal. Although a claim of *res judicata* may be resolved on a pre-answer motion to dismiss, *see, e.g., Lambert v. Conrad,* 536 F.2d 1183, 1186–87 (7th Cir.1976) (citing cases); *Hammer v. Town of Greenburgh,* 440 F.Supp. 27, 28–29 (S.D.N.Y. 1977), *aff'd without opinion,* 578 F.2d 1368 (2d Cir.1978), the Court will dispose of the matter by means of summary judgment.

5. Plaintiffs have not submitted any evidence that they lacked knowledge of the press release and radio interview at the time the state court action was commenced almost one year later. In any event, plaintiffs should have known about these publicly known facts in the exercise of reasonable diligence.

York law, the state and federal actions are the same action for *res judicata* purposes.[6]

## B. *Decision on the Merits*

Plaintiffs also argue that the two orders of dismissal do not constitute a decision on the merits in the state court action. In order to apply the preclusive effects of *res judicata* under New York law, the original action must have been decided on the merits. *See Garg v. Albert Einstein College of Medicine*, 747 F.Supp. 231, 235 (S.D.N.Y.1990) (citing *Alco Gravure, Inc. v. Knapp Foundation*, 64 N.Y.2d 458, 490 N.Y.S.2d 116, 119, 479 N.E.2d 752 (1985) and *Miller Mfg. Co. v. Zeiler*, 45 N.Y.2d 956, 411 N.Y.S.2d 558, 559, 383 N.E.2d 1152 (1978) (per curiam)). In dismissing the state court action against Gribetz, the Supreme Court, Rockland County expressly held that "[a] District Attorney is immune from civil liability for official acts performed in the pursuit of a criminal prosecution." Schaeffer Aff. Exh. A. In dismissing the state court action against the remaining defendants, the court recognized that "[d]efendants have moved for an order dismissing the complaint for failure to state a cause of action and for summary judgment since there are no triable issues of fact." Page Aff. Exh. A. The court then concluded, "Upon review of the papers submitted, the court grants the applications and cross-application by defendants and the complaint is dismissed, with prejudice." *Id.* In short, the two orders of dismissal clearly reflect the state court's determination on the merits that plaintiffs' claims against defendants are legally insufficient.

Plaintiffs argue that *Brown v. Bullock*, 17 A.D.2d 424, 235 N.Y.S.2d 837 (1962) compels a different result. In *Brown*, as in this case, plaintiffs commenced an action in the United States District Court for the Southern District of New York and a protective action in the Supreme Court, New York County. *Id.* 235 N.Y.S.2d at 838. After the federal court sustained subject matter jurisdiction and defendants had placed the state court action on the trial calendar, plaintiffs then moved for a voluntary discontinuance without prejudice in the state court action. *Id.* at 839. Following a procedure outlined in *Van Aalten v. Mack*, 9 A.D.2d 648, 191 N.Y.S.2d 390 (1st Dep't. 1959), the state court denied plaintiffs' motion for a discontinuance without prejudice and dismissed the action with prejudice. *See Brown*, 235 N.Y.S.2d at 839. The Appellate Division, First Department affirmed holding that any dismissal, whether by voluntary discontinuance or failure to proceed to trial, should be with prejudice in order to terminate the unnecessary and harassing state court action. *Id.* at 840–41.

Plaintiffs rely heavily on the fact that, in *Brown*, the Appellate Division, First Department provided that the dismissal with prejudice was only intended to have preclusive effects within the state court system, and did not preclude the pending federal action. *Brown*, 235 N.Y.S.2d at 841. In *Brown*, however, the state court acted only in response to plaintiffs' failure to proceed to trial and ensuing motion for a voluntary discontinuance without prejudice, and did not render a decision on the merits. *Id.* Therefore, in denying the plaintiff's application for a dismissal without prejudice, its principal concern was to preclude further harassment of the defendant in that forum. In the instant action, however, the state court acted in response to dispositive motions filed by defendants and did render a decision on the merits. It follows that the state court dismissal has preclusive effect in this action.

---

**6.** Although a prosecutor is clearly not entitled to absolute immunity from civil rights liability for defamatory out-of-court statements made to the press, *see Buckley v. Fitzsimmons*, —— U.S. ——, ——, 113 S.Ct. 2606, 2617, 125 L.Ed.2d 209 (1993), the Supreme Court "has given indications that perhaps only those who are defamed while in the course of being terminated from government employment can state a cause of action for deprivation of a liberty interest." *Valmonte v. Bane*, 18 F.3d 992, 1002 (2d Cir.1994); *see also Neu v. Corcoran*, 869 F.2d 662, 669–70 (2d Cir.), *cert. denied*, 493 U.S. 816, 110 S.Ct. 66,

107 L.Ed.2d 33 (1989); *Powers v. Coe*, 728 F.2d 97, 103 (2d Cir.1984). Therefore, these claims, had they been asserted in the state court action, might not have withstood a challenge based upon qualified immunity. In any event, the *res judicata* effects of a state court judgment are not "altered by the fact that the judgment may have been wrong or rested on a legal principle subsequently overruled in another case." *Federated Dep't Stores v. Moitie*, 452 U.S. 394, 398–99, 101 S.Ct. 2424, 2427, 69 L.Ed.2d 103 (1981); *see also Shea v. Shea*, 270 A.D. 527, 60 N.Y.S.2d 823, 826 (2d Dep't 1946).

This is especially true because the Appellate Division, Second Department has recently held that "leave to discontinue an action without prejudice should not be granted to enable a plaintiff to circumvent the effect of a court order in the defendant's favor precluding some of plaintiff's proof of malpractice, since prejudice would inure to the defendant." *Angerame v. Nissenbaum*, 617 N.Y.S.2d 194, 195 (2d Dep't 1994). If an order affecting an evidentiary proffer precludes a dismissal without prejudice, it follows that an order adjudicating a case on the merits must have *res judicata* effect.

### C. State Court Jurisdiction

Plaintiffs also argue that the Supreme Court, Rockland County lacked jurisdiction to transfer venue and that the two orders of dismissal were therefore without effect. Where, as here, a defendant seeks to transfer venue from an improper county to a proper county, it must first serve the plaintiff with a written demand to change venue before or with the service of answer, and then move to change venue within fifteen days thereafter. *See* N.Y.C.P.L.R. §§ 511 (McKinney 1976); *Vacant Lots, Inc. v. Town Bd. of Liberty*, 116 A.D.2d 865, 498 N.Y.S.2d 187, 188 (3rd Dep't.1986); *Hughes v. Nigro, M.D.*, 108 A.D.2d 722, 484 N.Y.S.2d 889, 890 (2d Dep't.1985); *Allstate Ins. Co. v. J.D. Whiting, Inc.*, 71 A.D.2d 1053, 420 N.Y.S.2d 808, 809 (4th Dep't.1979). If the plaintiff contests the demand by affidavit within five days, the defendant must make the ensuing motion in accordance with the standard rules of motion practice, *i.e.*, in the county where the action is pending or an adjacent county. *See* N.Y. C.P.L.R. §§ 511(b), 2212(a); *Vacant Lots*, 498 N.Y.S.2d at 188; *Hughes*, 484 N.Y.S.2d at 890; *Allstate*, 420 N.Y.S.2d at 809. If, however, the plaintiff fails to contest the demand by affidavit within five days, the defendant may move for a change of venue in the alleged proper county of venue. *See* N.Y. C.P.L.R. § 511(b); *Vacant Lots*, 498 N.Y.S.2d at 188; *Hughes*, 484 N.Y.S.2d at 890; *Allstate*, 420 N.Y.S.2d at 809.

In this case, defendant Rockland County failed to serve a demand to change venue with its initial answer on March 4, 1992, which plaintiffs rejected as "grossly untimely." [7] Pltfs. Mem. Exh. 23; Page Supp. Aff. ¶ 4, Exh. K; Rockland Supp. Rule 3(g) St. ¶ 2. By order dated April 7, 1992, however, the Supreme Court, New York County granted defendants an extension of time to serve their answers.[8] Page Supp. Aff. ¶¶ 5–6, Exhs. L, M & N. On May 8, 1992, defendant Rockland County then served its answer and a demand for a change of venue. Pltfs. Mem. Exhs. 23–24; Page Supp. Aff. ¶ 8, Exhs. O & P. On May 19, 1992, Rockland County then filed a motion for a change of venue in the Supreme Court, Rockland County, well within the fifteen-day deadline. Page Supp. Aff. Exh. R. On July 23, 1992, approximately two months later, plaintiffs filed an affidavit in opposition. Pltfs. Mem. Exh. 25; Page Supp. Aff. ¶ 11, Exh. S.

Accordingly, because plaintiffs failed to file their affidavit within the five-day period set forth by N.Y. C.P.L.R. § 511(b), Rockland County properly filed its motion to change venue in the Supreme Court, Rockland County, which it contended was the proper county of venue. In any event, even assuming that Rockland County moved in the wrong county, the two orders of dismissal are "not void as lacking in subject-matter jurisdiction because the Supreme Court is a court possessing statewide jurisdiction and is thus technically competent to entertain a motion no matter where the underlying action is pending." *Cwick v. City of Rochester*, 54 A.D.2d 1078, 388 N.Y.S.2d 753, 754 (4th Dep't.1976); *see also Velasquez v. Pine Grove Resort Ranch, Inc.*, 77 Misc.2d 329, 354 N.Y.S.2d 65, 67–68 (Sup.Ct. Ulster County 1974); *Ronan v. Levitt*, 73 Misc.2d 35, 341 N.Y.S.2d 176, 179 (Sup.Ct. Albany County), *aff'd*, 42 A.D.2d 10, 344 N.Y.S.2d 624 (3rd Dep't.1973).

### D. Finality of Judgments

Lastly, plaintiffs argue that the state court dismissals are not final judgments be-

---

7. In February 1992, the state court denied plaintiffs' application for a judgment by default. Page Supp. Aff. ¶ 3, Exh. J.

8. The Appellate Division, First Department later affirmed the extension. Page Supp. Aff. ¶ 9, Exh. Q.

cause notices of appeal have been filed with the Appellate Division, Second Department. Under New York law, however, the mere pendency of an appeal does not deprive a challenged judgment of its *res judicata* effects. *See Petrella v. Siegel*, 843 F.2d 87, 90 (2d Cir.1988); *Brown v. Manufacturers Hanover Trust Co.*, 602 F.Supp. 549, 551 (S.D.N.Y.1984); *Parkhurst v. Berdell*, 110 N.Y. 386, 392–93, 18 N.E. 123 (1888); *Samhammer v. Home Mut. Ins. Co.*, 120 A.D.2d 59, 507 N.Y.S.2d 499, 502–03 (3rd Dep't. 1986); *In the Matter of Amica Mutual Ins. Co.*, 85 A.D.2d 727, 445 N.Y.S.2d 820, 822 (2d Dep't.1981).[9] The Court therefore concludes that unless and until the state court judgments are reversed by the Appellate Division, Second Department, they continue to constitute final and binding adjudications.

### Conclusion

The instant action against defendants Raab, Rockland County, Taggart, Murphy, Grant, Green and Gribetz is barred under the doctrine of *res judicata*. The Clerk of the Court is directed to enter judgment in favor of these defendants as to all claims asserted by plaintiffs. It should be noted, however, that the Court will vacate this Order should the Appellate Division, Second Department reverse the Supreme Court, Rockland County.

As noted above, non-moving defendants Muhammad and Goldome have asserted cross-claims against defendant Rockland County, which has filed cross-claims against defendants Raab, Muhammad and Goldome. Accordingly, plaintiffs and defendants Muhammad, Goldome, Raab and Rockland County are directed to appear at a Pre–Trial Conference on February 17, 1995 at 10:30 a.m. in Courtroom 705.

It is **SO ORDERED.**

---

9. Similarly, the mere pendency of an appeal does not preclude the application of *res judicata* in federal question cases. *See United States v. All Right, Title & Interest in Real Property, etc.*, 901 F.2d 288, 292 (2d Cir.1990); *Fidelity Mortg. Inv.*

*v. First Nat'l City Bank*, 387 F.Supp. 544, 550–51 (S.D.N.Y.1974); *United States v. Nysco Labs., Inc.*, 215 F.Supp. 87, 89 (E.D.N.Y.), *aff'd*, 318 F.2d 817, 818 (2d Cir.1963).